**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JULIO VILLASANA, #425299,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-001062** |
| | ) | **Judge Crenshaw / Frensley** |
| **YOLANDA PITTMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.

Docket No. 26.  Along with that Motion, Defendant has contemporaneously filed a supporting

Memorandum of Law (Docket No. 27), the Declaration with Exhibits of Jessica Garner (Docket

Nos. 28 - 28-1), the Declaration with Exhibits of Yolanda Pittman (Docket Nos. 29 - 29-5), and a

Statement of Undisputed Material Facts (Docket No. 30).

Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material

Facts, nor has Plaintiff filed his own Statement of Undisputed Material Facts.

Plaintiff, an inmate of the Trousdale Turner Correctional Center ("TTCC"), filed this pro

se, in forma pauperis action pursuant to 42 U.S.C. §1983 against Defendant Yolanda Pittman, the

Assistant TTCC Warden, alleging violation of his Fourteenth Amendment rights by

discriminating against him because of his race and national origin.  Docket No. 9, Amended

Complaint.  Specifically, Plaintiff avers that Defendant discriminated against him by improperly

denying him access to Spanish language television programming.  *Id.*  Plaintiff sues Defendant in

her individual and official capacities, explaining: "[Defendant] is sued in her official capacity to the extent her actions were within the scope of her employment" since she is "responsible for deciding which television stations were permitted to be received and viewed by the prisoners confined within the prison"; and she is sued "in her individual capacity to the extent some or all of her conduct . . . fell outside the scope of policies for the Tennessee Department of Correction, CoreCivic/Trousdale Turner Correctional Center, or Correction Corporation of America." *Id.* at 3. Plaintiff seeks injunctive relief, a declaratory judgment, compensatory damages, and punitive damages. *Id.*

Defendant filed the instant Motion and supporting materials arguing that she is entitled to a judgment as a matter of law because: (1) Plaintiff did not exhaust his administrative remedies, as required under the Prison Litigation Reform Act; (2) Plaintiff cannot sustain his official capacity claim against her, as such a claim is actually against her employer, CoreCivic, and Plaintiff has failed to establish that an official CoreCivic policy, practice, or custom discriminated against him regarding access to Spanish language television programming; and (3) Plaintiff cannot establish either that Defendant treated him differently than other similarly situated individuals or that Defendant did any such thing purposefully with a discriminatory purpose. Docket No. 26.

As has been noted, Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts, nor has Plaintiff filed his own Statement of Undisputed Material Facts.

For the reasons set forth below, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, as required under the PLRA. Accordingly, the undersigned

recommends that Defendant's Motion for Summary Judgment be GRANTED, and that this

action be DISMISSED WITH PREJUDICE.

## II.  Undisputed Facts[1]

### A.  Declaration of Jessica Garner

Ms. Garner is an employee of CoreCivic, Inc. ("CoreCivic"), who at the time she filed her

Declaration, was employed as the Disciplinary Hearing Officer at TTCC, but who at all times

relevant to the instant action, had been employed as the TTCC Grievance Coordinator.  Docket

No. 28, ¶2.  CoreCivic's administrative grievance system enables inmates at TTCC to seek

redress for issues relating to the conditions of their confinement.  *Id.*, ¶ 3. Policy 501.01, Inmate

Grievance Procedures, provides that the processing of a standard inmate grievance at TTCC

proceeds as follows:

> First Level:  An inmate must file a grievance using CR-1394
> within seven calendar days of the occurrence or the most-recent
> occurrence giving rise to the grievance.  The chairperson will
> review the grievance and log the grievance as received.  The
> chairperson's response to the grievance will be written on CR-1394
> following the chairperson's receipt and review of the supervisor's
> response.  The chairperson and supervisor have seven working
> days to complete the response, which begins on the day that the
> grievance begins to be processed.  If the inmate accepts the
> response, it will be documented on CR-3148.

> Second Level: Within five calendar days of being notified of the
> Level One response, the inmate may appeal the response to the
> grievance committee and the warden.  A hearing will take place
> within five working days of the appeal's filing.  Within five
> working days of the hearing, the grievance committee's proposed
> response will be documented on CR-1393 and will be forwarded to
> the warden.  Within seven working days of receipt, the warden will

---

[1] Unless otherwise noted, these facts are in a form required by Fed. R. Civ. P. 56, and are
undisputed.

forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and not subject to appeal.

*Id.*, ¶ 4.

Plaintiff has not filed any grievances during his incarceration at TTCC. *Id.*, ¶ 5. Ms. Garner has not prevented Plaintiff from filing grievances. *Id.*, ¶ 6. Ms. Garner has neither destroyed grievances nor instructed others to do so. *Id.*

## B.  Declaration of Yolanda Pittman

Ms. Pittman, at all times relevant to the case at bar, has been employed by CoreCivic as an Assistant Warden at TTCC. Docket No. 29, ¶ 2. As such, Ms. Pittman is responsible for the overall supervision and efficiency of all inmate treatment programs at TTCC, which include Educational/Vocational Services, Medical/Mental Health Services, Residential Drug & Alcohol Programs (Therapeutic Community), Classification/Re-Entry Services, Prison Rape Elimination Act (PREA) & Title VI Coordination, Chapel/Religious Services, Inmate Jobs & Programming, and Inmate Records. *Id.*, ¶ 4. She assists the TTCC Warden in carrying out a variety of tasks in the areas of program policy, planning, research, and management analysis, and she is responsible for advising the Warden on the evaluation and effectiveness of inmate programs. *Id.* She

additionally directs and develops plans for project teams or other groups in accomplishing and producing projects and studies related to inmate programs. *Id.*

On December 22, 2015, CoreCivic entered into a Bulk Television Programming Services Contract (the "December 2015 Contract") with North Central Telephone Cooperative ("NCTC") for the purpose of providing television programming at TTCC. *Id.*, ¶ 5; Ex. A. On May 10, 2016, CoreCivic and NCTC executed an Amendment to the December 2015 contract (the "May 2016 Amendment"). *Id.*, ¶ 6; Ex. B. The December 2015 Contract and the May 2016 Amendment collectively are referred to as the "Programming Services Contract." *Id.*

NCTC offers the following television channels at TTCC according to the Programming Services Contract: WKRN ABC, WKRN Channel 2 Weather, WSMV NBC, WTVF CBS, NCTC KY Local, News Channel 5+, Weather Channel, NCTC TN Local, FOX WZTV, ESPN, WNPX, WUXP, WNAB CW, WGN, CNN, Fox News, Allen County Schools, Macon Schools, Sumner Schools, Smith Schools, TNT, A&E, FXM, BET, VH1, CMT, USA, FX, ESPN2, ESPNU, SPIKW, SyFy, GAC, TBS, MTV, Discovery, Investigation Discovery, NatGeo, Animal Planet, and Comedy Central. *Id.*, ¶ 7.

NCTC did not offer Spanish language television channels as of the date of Plaintiff's Amended Complaint. *Id.*, ¶ 8. In response to an inquiry from CoreCivic regarding Spanish language television channels, NCTC sent correspondence to CoreCivic dates April 9, 2018, stating that NCTC "currently do[es] not offer any Spanish Language channels." *Id.*, Ex. C.

Ms. Pittman does not recall an encounter with Plaintiff on July 18, 2016, but she would not tell an inmate that she would never add "any Mexican stuff" to the programming provided to inmates at TTCC. *Id.*, ¶ 9. Additionally, Ms. Pittman does not recall an encounter with Plaintiff

on November 22, 2016, but she would not tell an inmate, "If you want Mexican T.V., you should go back to Mexico!" *Id.*, ¶ 10.

Relevant policies are designed and intended to ensure that CoreCivic employees treat all inmates the same with respect to television programming at TTCC and do not treat inmates differently on the basis of race. *Id.*, ¶ 11; *See also,* Policy 510-01, Recreation Programs and Policy 14-4, Legal Rights of Inmates/Residents *Id.*, ¶¶ 12, 13; Exs. D, E. CoreCivic customs further mandate that all employees must treat all inmates the same with respect to the television channels available at the facility and do not treat inmates differently on the basis of race. *Id.*, ¶ 14.

Ms. Pittman has not prevented Plaintiff from filing grievances, has not destroyed grievances, and has not instructed others to do so. *Id.*, ¶ 15.

## II.  Law and Analysis

### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b.  Response.**  Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on November 1, 2018.  Docket No. 26.  Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

**c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...

. . .

**g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

[A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met her

burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to

summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

Plaintiff alleges that Defendant violated his Fourteenth Amendmen constitutional rights pursuant to 42 U.S.C. § 1983.  *See* Docket No. 50.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D.  Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law.  42 U.S.C. §1997e(a).  *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999).  The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a)  **Applicability of Administrative Remedies**.  No action shall be brought with  respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a).  Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999).  In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . .  We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42

U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff

inmate brought a lawsuit against prison officials claiming that they had used excessive force

against him. The lower court had dismissed his complaint for failure to exhaust administrative

remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his

administrative remedies because his excessive force claim did not involve a "prison condition"

within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not
> defined in § 1997e. Because the question is one of statutory
> construction, we must first look to the plain language of the statute.
> Defendants argue that the term "prison conditions" as used in 18
> U.S.C. § 3626(g)(2), which was amended as part of the same
> legislation as § 1997e, does include claims such as excessive force
> because it expressly includes "effects of actions of government
> officials on the lives of confined persons" as well as "conditions of
> confinement" in defining "prison conditions." . . . It is generally
> recognized that when Congress uses the same language in two
> different places in the same statute, the words are usually read to
> mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims
> of excessive force finds support in the purpose and legislative
> history of the Act. The Act was passed to reduce frivolous prisoner
> lawsuits and to reduce the intervention of federal courts into the
> management of the nation's prison systems. A broad exhaustion
> requirement that includes excessive force claims effectuates this
> purpose and maximizes the benefits of requiring prisoners to use
> prison grievance procedures before coming to federal court.
> Prisons need to know about and address claims of excessive force
> as they would any other claim concerning prison life so that steps
> may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies

to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*,

534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002).  As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . .  In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

**E.  The Case at Bar**

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a).  He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish, *inter alia*, that TTCC has a three level grievance procedure in place, but that Plaintiff has not filed any grievances whatsoever during his incarceration at TTCC.  *See* Docket No. 28, ¶¶ 3-5.  It is further undisputed that neither Ms. Garner nor Ms. Pittman have prevented Plaintiff from filing grievances, have destroyed grievances, or have instructed others to do so.  *Id.*, ¶ 6; Docket No. 29, ¶ 15.  Accordingly, it is undisputed that Plaintiff has failed to exhaust his administrative remedies, such that Defendant's Motion for Summary Judgment should be GRANTED.

Moreover, even if Plaintiff had exhausted his administrative remedies, it is undisputed that NCTC did not offer Spanish language television channels as of the date of Plaintiff's Amended Complaint, and that, in response to an inquiry from CoreCivic regarding Spanish language television channels, NCTC sent correspondence to CoreCivic dates April 9, 2018, stating that NCTC "currently do[es] not offer any Spanish Language channels." *Id.*, ¶ 8, Ex. C.

Additionally, it is undisputed that Ms. Pittman does not recall an encounter with Plaintiff on July 18, 2016, but she would not tell an inmate that she would never add "any Mexican stuff" to the programming provided to inmates at TTCC, and that Ms. Pittman does not recall an encounter with Plaintiff on November 22, 2016, but she would not tell an inmate, "If you want Mexican T.V., you should go back to Mexico!" *Id.*, ¶¶ 9, 10.

Finally, it is undisputed that CoreCivic has policies and customs requiring CoreCivic employees to treat all inmates the same with respect to television programming at TTCC and not to treat inmates differently on the basis of race. *Id.*, ¶¶ 11-14.

## IV. Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. The undersigned further finds that the undisputed facts demonstrate that Defendant did not violate Plaintiff's constitutional rights, such that Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 26) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge